OPINION
Defendant-appellant, Richard Cope, appeals from a decision of the Columbiana County Court of Common Pleas finding him guilty of one count of receiving stolen property in violation of R.C. 2913.51(A) after a trial to a jury.
On or about August 29, 1999, a 1975 Corvette was stolen out of Paul Merz's (Merz) garage in Columbiana County. Merz called the Columbiana County Sheriff's Department and filed a stolen vehicle report.
Appellant was indicted on one count of receiving stolen property in connection with Merz's Corvette. He pled "not guilty" to the charge. The case was assigned to a particular trial court judge. In a letter dated February 17, 2000, the judge advised appellant's counsel that the victim in this case (Merz) had installed windows in his home on two occasions and would probably do more work for him in the future. As a result, appellant filed a motion with the trial court judge asking him to recuse himself. The judge denied the motion on April 7, 2000 and the case proceeded to trial.
A jury found appellant guilty of receiving stolen property. The judge who presided over the trial then transferred appellant's case to another judge for sentencing. The court sentenced him to sixteen months in a state correctional institution. This appeal followed.
At the outset, it should be noted that plaintiff-appellee, the State of Ohio, neglected to file a brief in this matter until one day before the scheduled oral argument. Since appellee failed to file a brief in a timely fashion, it was not permitted to present its arguments before this court. In addition, this court will not consider appellee's brief in this case.
Appellant alleges two assignments of error, the first of which states:
 "THE JUDGMENT AND VERDICT OF THE TRIAL COURT, FINDING APPELLANT GUILTY OF RECEIVING STOLEN PROPERTY, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant claims that the jury's verdict was against the manifest weight of the evidence. He asserts that because no witness placed him at the scene of the crime and since fingerprint evidence was inconclusive, there was not enough evidence on which to convict him.
In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasissic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of violating R.C. 2913.51(A). It provides:
 "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
When the property involved is a motor vehicle, receiving stolen property is a felony of the fourth degree. R.C. 2913.51(C).
At trial, the following evidence was presented. On the weekend of August 29, 1999, Merz and his wife were out of town. Merz testified that when they returned to their home on Metz Road in Columbiana, his 1975 Corvette was missing from the garage. Merz contacted the Columbiana County Sheriff's Department and his wife filed a stolen vehicle report. The Merzs also contacted other local law enforcement agencies and advised them to keep a watch for their car.
The Youngstown Police Department later recovered the Corvette in Youngstown. When the car was stopped, it was in the possession of one Randy Dillon (Dillon). The Corvette was returned to Merz and later dusted for fingerprints. However, the fingerprint analysis was inconclusive.
Merz testified that a neighbor contacted him and informed him that he believed a man named Rick Cope had stolen his Corvette. Merz did not give this information much credence until later, while cleaning his car, Merz discovered a notebook in the car that did not belong to him. The notebook contained several names and phone numbers including a listing for "Rick 482-5463." A check of the local white pages revealed that the telephone number belonged to Allen Cope, appellant's father, with whom appellant resides. Merz notified the Sheriff's Department of this information.
Given this information, the Sheriff's Department proceeded with their investigation. On September 10, 1999, Detective Sergeant Andy Sweeney (Sweeney) spoke with Dillon about how he had obtained Merz's Corvette. Sweeney testified that Dillon picked appellant out of a photo line-up as the man from whom he had obtained the Corvette. Subsequently, Sweeney along with Detective John Jay (Jay) questioned appellant regarding his involvement with the stolen Corvette. Jay testified that appellant indicated to them that he did not steal the Corvette. However, appellant also asked Sweeney and Jay to let Dillon "take the fall" for the stolen car and to leave him alone. Also, Jay testified that after he and Sweeney informed appellant about the details that led them to believe he stole the Corvette, Jay asked appellant if what he had recounted to him was the truth. Appellant responded that it was the truth.
Jay also testified that he received a letter from Jeffrey Woods (Woods), an inmate who was in jail with appellant. The letter contained information regarding a conversation Woods had with appellant.
Woods testified that he knew appellant and that they were incarcerated together in September of 1999. He testified that appellant told him that he had stolen the Corvette. He further testified that after appellant relayed this information to him, he wrote the letter to Jay informing him of appellant's admission. Woods also testified that appellant conveyed to him that he went to Merz's house intending to break into the house when he found the Corvette in the garage. Woods testified that appellant stated that he then went home and called Merz's house to see if anyone was home. When no one answered the phone, appellant returned to Merz's garage and took the Corvette. Appellant then drove the Corvette to Youngstown where he gave it to someone else, possibly in exchange for crack cocaine.
Based on the testimony and exhibits presented at trial, it cannot be said that the jury lost its way in resolving the evidence. The jurors were able to observe the witnesses' demeanors while testifying and evaluate their truthfulness. Appellee presented evidence that went to each of the elements of receiving stolen property and for making it a felony of the fourth degree. Appellee introduced ample, credible evidence to support the jury's finding of guilt.
Accordingly, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED IN FAILING TO RECUSE HIMSELF AS TRIAL JUDGE."
Appellant argues that the trial court judge should have recused himself from this case due to the fact that the judge had a business relationship with the victim. He asserts that transferring the case would have caused only minimal hardship to the court and would have eliminated any appearance of unfairness or impropriety.
"The Chief Justice of the Supreme Court of Ohio, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." Jones v. Billingham (1995), 105 Ohio App.3d 8,11; Citing, Section 5(C), Article IV, Ohio Constitution, Adkins v.Adkins (1988), 43 Ohio App.3d 95. R.C. 2701.03 provides the exclusive means by which a litigant can assert that a common pleas judge is biased or prejudiced. Id. R.C. 2701.03(A) provides:
 "If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section."
An appellate court lacks the authority to pass upon the disqualification of a common pleas court judge or to void the judgment of a trial court on that basis. State v. Ramos (1993), 88 Ohio App.3d 394,398. Therefore, we are without jurisdiction to reverse the trial court's decision on this basis.
Appellant's second assignment of error is also without merit. Accordingly, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs
DeGenaro, J., concurs